**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| KRISTOPHER SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-02986-SHL-tmp |
| | ) | |
| JONATHAN SKRMETTI, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DIRECTING CLERK TO MODIFY DOCKET, DENYING § 2254
PETITION, DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Before the Court is Petitioner Kristopher Smith's[1] petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 (ECF No. 1, "the § 2254 Petition") and Respondent Jonathan

Skrmetti's Answer thereto (ECF No. 32). For the following reasons, the § 2254 Petition is

**DENIED**.

---

[1] On October 24, 2017, Smith filed a notice of change of address indicating that he had been released from the custody of the Tennessee Department of Corrections ("TDOC") and was residing in Memphis, Tennessee. (ECF No. 21.) Smith is currently on parole for the convictions which he challenges in his § 2254 Petition. *See* https://foil.app.tn.gov/foil/search.jsp (click "Search By State ID"; type "02521167"; click "Search") (last accessed Apr. 8, 2026).

Public records indicate that on October 16, 2024, former Judge John T. Fowlkes, Jr., sentenced Smith to serve thirty months in the Bureau of Prisons ("BOP") after he pleaded guilty to two counts of being a felon in possession, in violation of 18 U.S.C. § 922(g). *See* J., *United States v. Smith*, No. 2:23-cr-20076-JTF (W.D. Tenn. Oct. 16, 2024) (ECF No. 55). He is currently incarcerated at the Federal Correctional Institution in Forrest City, Arkansas. *See* https://www.bop.gov/inmateloc/ (click "Find By Number"; type "57793-510"; click "Search") (last accessed Apr. 8, 2026). The Clerk is **DIRECTED** to modify the docket to reflect that Smith is currently incarcerated under BOP register number 57793-510 at FCI Forrest City Low, Federal Correctional Institution, P.O. Box 9000, Forrest City, AR 72336.

## STATE COURT PROCEDURAL BACKGROUND

On April 24, 2008, a Shelby County grand jury returned an indictment charging Smith with one count of especially aggravated kidnapping, one count of aggravated rape, and one count of aggravated robbery. (ECF No. 14-1 at PageID 87–90.) Smith was represented by Harold Archibald in the trial court. (*Id.* at PageID 84.)

On August 3, 2009, before trial proceedings began, the State *nolle prossed* the aggravated robbery charge. (ECF No. 14-14 at PageID 275.) On August 6, 2009, a jury convicted Smith of an amended charge of aggravated kidnapping and an amended charge of rape. (ECF No. 14-6 at PageID 641.) On September 1, 2009, Smith filed a motion for judgment of acquittal or a motion for new trial, arguing, among other things, that (1) the evidence was insufficient to support the jury's verdict; (2) the trial court erred in failing to find a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); and (3) the State "made an improper and highly prejudicial and inflammatory[] argument to the jury." (ECF No. 14-1 at PageID 116–17.) The trial court overruled Smith's motion on December 10, 2009. (*Id.* at PageID 121.) That same day, the trial court sentenced him to an aggregate sentence of 10 years at 100%. (*Id.* at PageID 113–15.)

On January 5, 2010, the trial court appointed Stephen Tapp to represent Smith on appeal. (*Id.* at PageID 122.) Smith filed his notice of appeal on January 8, 2010. (*Id.* at PageID 123.) On appeal, he argued that (1) the trial court erred by not sustaining his *Batson* objections when the State struck two black males from the jury; (2) the trial court erred by finding the State's explanation "sufficiently sex-neutral to explain its peremptory strike of one white male from the jury"; (3) the trial court erred by finding that Smith's prior conviction for aggravated robbery could be used to impeach him, effectively discouraging him from testifying on his own behalf; (4) the trial court erred by denying his motion for judgment of acquittal and motion for new trial;

and (5) the trial court erred by setting his "sentence two years higher than the minimum for Range I." (ECF No. 14-8 at PageID 682.) On June 2, 2011, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's decisions. *State v. Smith*, 2011 WL 2176580, at *1 (Tenn. Crim. App. June 2, 2011) (ECF No. 14-10). On July 29, 2011, Smith sought discretionary review. (ECF No. 14-11.) On September 21, 2011, the Tennessee Supreme Court denied Smith's application for permission to appeal. *See Smith*, 2011 WL 2176580.

On June 6, 2012, Smith filed a *pro se* post-conviction petition pursuant to Tennessee Code Annotated § 40-30-101 *et seq.* (ECF No. 14-13 at PageID 806-31.) He asserted that (1) he was convicted by a jury that was unconstitutionally selected and impaneled; (2) he was denied his right to a jury determination of all facts legally essential to convict or sentence; (3) the State knowingly used perjured testimony to obtain a conviction; and (4) counsel rendered ineffective assistance by (a) failing to object to sentencing enhancement factors found by the judge, (b) failing to investigate the case, (c) failing to present all of Smith's alibi witnesses, (d) failing to raise an alibi defense, and (e) failing to interview potential defense witnesses. (*See id.*) On July 7, 2012, attorney J. Jeffrey Lee filed an amended petition on Smith's behalf. (*Id.* at PageID 832–37.)

The post-conviction court held an evidentiary hearing on February 15, 2013. (ECF No. 14-15.) Petitioner and his parents testified at that hearing. (*Id.* at PageID 1179.) The State noted that trial counsel died prior to the hearing. (*Id.* at PageID 1247.) On April 12, 2013, the post-conviction court denied relief. (ECF No. 14-13 at PageID 840–55.) Smith, through attorney Lee, filed a notice of appeal on April 26, 2013. (*Id.* at PageID 857.) On April 23, 2014, the TCCA affirmed the denial of post-conviction relief. *Smith v. State*, 2014 WL 12651025, at *6 (Tenn. Crim. App. Apr. 23, 2014) (ECF No. 14-18). The Tennessee Supreme Court denied

3

permission to appeal on September 24, 2014. *See Smith v. State*, No. W2013-01135-SC-R11-PC

(Tenn. Sept. 24, 2014) (per curiam).

## THE EVIDENCE

At trial, the victim, sixteen-year-old J.V., was called as a witness for the State. She stated

that, on October 23, 2007, she "was walking home from school" when she "noticed a 'beige'

Cadillac pull up behind her." *Smith*, 2011 WL 2176580, at *1. Smith "got out of the car and

pointed a gun at her." *Id.* He told her to be quiet and to get in the car. *Id.* The victim stated that

she "got into the front seat of the car, and Smith drove her to 'a dark place.'" *Id.* Smith forced

the victim to get in the back seat, "had her remove her pants and underwear, and placed his penis

inside of her vagina." *Id.* The victim said she was able to observe Smith's tattoos, "including a

tiger on his right chest, the word 'Boo' on his arm, and other words on the left side of Smith's

chest." *Id.* She grabbed a piece of paper from the car before Smith pushed her out of it. *Id.*

That piece of paper was Smith's electric bill receipt and was used by law enforcement to "locate

Smith the next day." *Id.* Smith's attorney tried to impeach the victim during cross-examination

using inconsistencies between the victim's trial testimony and her prior statements. *Id.* at *1–2.

Following the testimony of other witnesses, the State rested. Smith's attorney then moved for a

judgment of acquittal, which the trial court denied. *Id.* at *3.

Walgreen's employee Amber Clark testified on Smith's behalf. *Id.* at *3. She testified

that "on the day of the offense she observed Smith purchase cranberry juice from the photo

counter at Walgreens." *Id.* Clark identified a receipt "as confirmation that she 'checked [Smith]

out' at 8:27 p.m. on the night of the offense." *Id.* She also identified a photograph of Smith "as

the person who purchased the cranberry juice on the night of the offense," and on cross-

4

examination, "recalled seeing Smith that night based on a conversation they had about cranberry juice." *Id.*

## THE HABEAS PROCEEDINGS

Smith filed his initial *pro se* § 2254 Petition on December 15, 2014.  (ECF No. 1.)  He argues the following grounds for relief:

I.    Whether the trial court erred in not sustaining his *Batson* objections to the prosecution's peremptory strikes of two black males from the jury?

II.    Whether the trial court erred in finding the prosecution's explanation sufficiently sex-neutral to explain [] its peremptory strike of one white male from the jury after the court inquired into same?

III.    Whether the trial court erred in finding that [Smith's] prior conviction for aggravated robbery could be used to impeach him, thereby discouraging [Smith] from testifying on his own behalf at trial?

IV.    Whether the trial court erred in denying [Smith's] motion for judgment of acquittal and motion for new trial?

V.    Whether the trial court erred in setting [Smith's] sentence two years higher than the minimum for Range I?

VI.    Whether the trial court abused its discretion in denying relief under the *White*[2] factors when the proof at trial demonstrated that confinement (under the kidnapping statute) was incidental to the accompanying felony?

VII.    Whether the trial court abused its discretion in denying relief when the post-conviction hearing demonstrated that trial counsel failed to introduce testimony or exhibits regarding [Smith's] sexually transmitted disease (STD)?

VIII.    Whether the trial court abused its discretion in denying relief when the post-conviction hearing demonstrated that trial counsel failed to secure and present a qualified expert witness, or to request a continuance for same?

IX.    Whether the trial court abused its discretion in denying relief when the post-conviction hearing demonstrated that trial counsel failed to call witnesses to account for the time frame during which the crime allegedly occurred?

---

[2] *State v. White*, 362 S.W.3d 559 (Tenn. 2012).

  X.  Whether the trial court abused its discretion in denying relief when the post-conviction hearing demonstrated that trial counsel failed to present exhibits to account for the time frame during which the crime allegedly occurred?

  XI.  Whether the trial court abused its discretion in denying relief when the post-conviction hearing demonstrated that trial counsel's performance suffered due to being upset over not being fully compensated?

  XII.  Whether [Smith] was/is actually innocent? Whether trial counsel was ineffective in presenting this issue? And whether post-conviction counsel failed in raising this issue under the ineffective-assistance-of-trial-counsel (IATC)?

(*Id.* at PageID 7–21.)

On February 6, 2015, the Court ordered Skrmetti to file a response and the state court record. (ECF No. 5.) Skrmetti filed a motion to dismiss for Smith's failure to exhaust his state remedies on April 20, 2015 (ECF No. 13), and the state court record two days later (ECF No. 14). On October 20, 2015, the Court denied the motion to dismiss and administratively closed this case while Smith completed his ongoing *coram nobis* litigation in state court. (ECF No. 15.) The Court ordered Smith to advise the Court of the status of his *coram nobis* petition and to disclose the existence of any other collateral challenge that he had filed or planned to file. (*Id.* at PageID 1333.) Smith was also ordered "to notify the Court within twenty-eight days of the date on which all state-court collateral proceedings have concluded and to file an amended petition on the official form that includes any new issues that [he] seeks to raise and the steps he has taken to exhaust the unexhausted claims in the original § 2254 petition." (*Id.*)

On December 11, 2015, Smith notified the Court that the Shelby County Criminal Court had denied his petition for a writ of error *coram nobis* on March 30, 2015. (ECF No. 18 at PageID 1338.) On December 5, 2015, Smith filed an untimely appeal of that order. (*Id.* at PageID 1339.)

On July 20, 2016, Smith filed an amended § 2254 petition stating that his procedural default of certain claims could be overcome in light of the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013).  (ECF No. 19.)

On August 31, 2016, Smith filed another amended § 2254 petition which was actually a motion to reopen the case.  (ECF No. 20.)  Smith attached a copy of a motion that he filed with the Shelby County Criminal Court to dismiss his *coram nobis* petition without prejudice.  (ECF No. 20-1.)  That case was apparently Smith's second *coram nobis* petition.

On June 14, 2023, the Court reopened the case and ordered Skrmetti to respond to the § 2254 petition.  (ECF No. 25.)  After receiving three extensions of time, Skrmetti filed a response (ECF No. 32) on October 4, 2023.[3]  He contends that Smith's grounds for relief are either not cognizable on federal habeas review or lack merit.  (*See generally* ECF No. 32.)  Smith has not filed a reply, and the time to do so has expired.  (*See* ECF No. 25.)

### FEDERAL HABEAS REVIEW STANDARD

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance,

---

[3] Skrmetti also filed a motion to waive the filing of additional state court records, asserting that he had not yet received the requested pleadings from the Shelby County Criminal Court and that they were not necessary for resolving Smith's grounds for relief.  (ECF No. 33.)  The Court granted that motion on October 5, 2023.  (ECF No. 34.)

the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)–(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

8

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-

9

trial-counsel claim.  *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome a procedural default by establishing a "gateway" claim of actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 315 (1995).  To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial."  *Id.* at 324.  He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him."  *Id.* at 327.

## ANALYSIS

### A.       Arguments Regarding the Prosecutor's Use of Peremptory Strikes

Smith's first two arguments concern the prosecutor's use of peremptory strikes during jury selection.  First, Smith asserts that the trial court erred by "not sustaining [his] *Batson* objections to the prosecution's peremptory strikes of two black males from the jury."  (ECF No. 1 at PageID 7.)  Second, Smith contends that the trial court "erred in finding the prosecution's explanation sufficiently sex-neutral to explain . . . its peremptory strike of one white male from the jury after the court inquired into same."  (*Id.* at PageID 10–11.)

"[T]he Equal Protection Clause [of the Fourteenth Amendment] forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89.  The Supreme Court has established a three-step process for trial judges to employ in evaluating claims made under *Batson*.  "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a

10

race-neutral explanation for striking the jurors in question.  Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez v. New York*, 500 U.S. 352, 358–59 (1991) (internal citations omitted).

"[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96.  A defendant "make[s] out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162, 168 (2005) (internal quotation marks omitted).

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.  For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.  Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose.  These examples are merely illustrative.  We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

*Batson*, 476 U.S. at 96-97 (internal quotation marks and citations omitted).  The defendant is not required, as part of his prima facie case, to show that it is more likely than not the other party's peremptory challenges were based on impermissible group bias. *Johnson*, 545 U.S. at 168.

If the defendant meets his required showing, the burden shifts to the State to demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result." *Batson*, 476 U.S. at 94 (quoting *Alexander v. Louisiana*, 405 U.S. 625, 632 (1972)).  The State's explanation must consist of more than "general assertions" but "need not rise to the level justifying exercise of a challenge for cause." *Id.* at 97–98.  Moreover, the

11

trial court has a "duty to determine if the defendant has established purposeful discrimination."

*Id.* at 98.

In 1994, the Supreme Court extended the principles set forth in *Batson* to hold "that gender, like race, is an unconstitutional proxy for juror competence and impartiality." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994). Thus,

> [a]s with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. When an explanation is required, it need not rise to the level of a "for cause" challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual.

*Id.* at 144–45.

### 1.    Strikes of Black Jurors

According to Smith, the reasons given by the prosecution for peremptorily striking two black males from the jury were pretextual when comparing the prosecution's questioning of those jurors to the questioning, or lack thereof, of other jurors. (ECF No. 1-1 at PageID 30.) Smith states that the prosecution struck a black male after he answered questions regarding his receipt of a ticket and the fact that he challenged the ticket in court but did not further question a white female juror who had received a speeding ticket and did not go to court to challenge it. (*Id.*) Smith argues further that when the prosecution contends that it struck another black male after he said he could not convict Smith if the State met its burden, the prosecution misrepresented its questioning of this individual, and it failed to challenge a white female juror who indicated an inability to be impartial. (*Id.* at PageID 31–32.)

The TCCA summarized the relevant record regarding Smith's race-based *Batson* claims. First, the State "questioned the prospective jury about whether anyone had previously had a 'bad experience with police' or had '[gotten] a ticket [that they] didn't think [they] should [have]

gotten[.]" *Smith*, 2011 WL 2176580, at *4.  Juror One responded that he had, that he went to court, and that the ticket was dismissed.  *Id.*  The State asked, "Did they—they say it was just no grounds for it or you got a good representation?"  *Id.*  Juror One responded, "Well, I don't know about that, but it got dismissed."  *Id.*  When the State asked another juror the same question, that juror replied, "I didn't go to court, but I wasn't speeding neither [sic]."  *Id.*  The State did not ask that juror, a female, a follow-up question.  *Id.*

Later, the State asked Juror Two "if he could convict the defendant of the charges in this case if the State met its burden beyond a reasonable doubt."  *Id.*  Juror Two responded, "I really couldn't say at the time.  I would have to just see what we did and what."  *Id.*  The State then asked, "Okay, All right.  Just saying that we prove this before you beyond a reasonable doubt, can you make that decision to convict the defendant?"  *Id.*  Juror Two replied, "Beyond, I don't think so."  *Id.* at *5.  Ultimately, Juror Two indicated that he could "keep an open mind" and make a decision to "acquit or convict based on what [he had] heard."  *Id.*

The State later exercised peremptory strikes of these jurors. *Id.*  Counsel "raised a *Batson* challenge because both jurors were African American males."  *Id.*  The trial court noted that it was not sure "that a prima facie case has been made out at this time," but asked the State for race-neutral reasons.  *Id.*  The State explained it had struck Juror Two "because he replied, '[N]o,' when asked if he would convict upon proof of the defendant's guilt beyond a reasonable doubt."  *Id.*  The State explained that it struck Juror One "because it appeared he 'had an issue with law enforcement and he wouldn't divulge what it was.'"  *Id.*  The trial court denied the *Batson* challenge, concluding that the State had provided race-neutral reasons for its strikes.  *Id.*

The TCCA affirmed the rejection of Smith's *Batson* challenge.  First, the TCCA "decline[d] Smith's invitation . . . to take judicial notice of a magazine article attached to

the appendix of his brief." *Id.* at *6.  The TCCA also rejected Smith's suggestion that the

court "view the prosecution's lack of follow-up questions to female jurors regarding the

same line of questions posed to the African American male jurors as evidence that the

prosecutor's explanation for peremptorily striking the two African American jurors was

pre-textual." *Id.*  The court agreed with the trial court's conclusion that the reasons given

by the State were "race neutral." *Id.*

 *Batson* claims present mixed questions of law and fact.  *See Lancaster v. Adams*, 324

F.3d 423, 429 (6th Cir. 2003).  However, "the question of 'whether a prosecutor intended to

discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a

question of historical fact.'"  *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 367 (1991)).  In

federal habeas corpus proceedings, the state courts' factual findings on this issue are presumed

correct unless the petitioner demonstrates, by clear and convincing evidence, that those findings

are erroneous.  *See* 28 U.S.C. § 2254(e)(1).  Accordingly, "a federal habeas court can only grant

[the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the

*Batson* challenge."  *Rice v. Collins*, 546 U.S. 333, 338 (2006).

 Smith fails to offer clear and convincing evidence that the state courts' factual findings

regarding the prosecutor's race-neutral explanations are erroneous.  As for the first black juror,

Smith suggests that the prosecutor's given reason "showed at least a memory lapse about an

exchange that had just taken place, if not a disingenuous mischaracterization of the exchange."

(ECF No. 1-1 at PageID 31.)  Smith, however, provides no evidence regarding how the

prosecutor allegedly mischaracterized the exchange, nor does he provide any evidence that the

prosecutor's reasoning was pretextual.  While Smith faults the prosecutor for unfairly presenting

the exchange with the second juror because she "le[ft] out [his] final answer," which was that he

14

could "keep an open mind as to the facts of the case and . . . make the decision . . . to acquit or convict based on what you have heard," Smith fails to provide any evidence suggesting that the prosecutor's reliance on the juror's initial statement that he could not be impartial was pretextual. (*Id.* at PageID 32.)  And the fact that another juror also had an issue with a ticket does not change the conclusion here, given the differences in the jurors' other answers.

Finally, Smith's invitation for this Court to "take judicial notice of an article on this very subject appearing in the New York Times on June 1, 2010" is misplaced.  (*Id.*)  Because the TCCA decided Smith's claim on the merits, this Court's review is "limited to the record that was before the [TCCA]," and Smith "must overcome the limitation of § 2254(d)(1) on the record that was before the state court."  *See Cullen v. Pinholster*, 563 U.S. 170, 181, 185 (2011).

For these reasons, Smith's first basis for relief under *Batson* lacks merit and is **DENIED**.

### 2.    Strike of White Male Juror

Smith contends that the bench conference held regarding the prosecution's strike of the white male juror serves as proof that the prosecution's reasons were pretextual.  (ECF No. 1-1 at PageID 34.)  Smith states that Assistant District Attorney Theresa McCusker took over questioning during *voir dire* and did not challenge a female juror who revealed that she had been the victim of an aggravated robbery and a home burglary.  (*Id.* at PageID 34–-35.)  Smith argues that the "prosecution's pretextual reasons . . . misled the judge into allowing the strikes in error and were a factor in composing a jury of ten women and only two men."  (*Id.* at PageID 35.)

The record reflects that the trial court asked the prosecution for its reason for striking the white male juror.  (ECF No. 14-4 at PageID 329.)  The prosecutor stated that the juror in question "looked at [him] with skepticism the entire time" during questioning.  (*Id.* at PageID 330.)  The prosecutor also noted that the juror "looked uninterested" and "typically acted like he

15

didn't want to respond." (*Id.*)  The trial court denied Smith's counsel's challenge to the prosecutor's reasoning.  (*Id.* at PageID 330–31.)

Smith re-raised his challenge in his motion for judgment of acquittal or for a new trial. (ECF No. 14-1 at PageID 119.)  The trial court denied Smith's challenge again, noting that "there was no prima facie case set out and the reasons given by the State were sufficient and . . . [a] sex neutral explanation of the peremptory challenges were given to satisfy the Court."  (ECF No. 14-7 at PageID 673.)

Smith challenged the trial court's denial on direct appeal, and the TCCA rejected it. The TCCA acknowledged that the same standard applied to both race-based and gender-based claims of discrimination in jury selection.  *Smith*, 2011 WL 2176580, at *7.  The TCCA concluded that "the record supports the trial court's determination that the State's exercise of a peremptory strike of a single white male was gender-neutral." *Id.*

Here, Smith fails to demonstrate that the TCCA's rejection of his gender-based peremptory strike challenge was contrary to or an unreasonable application of *J.E.B.* and was based on an unreasonable determination of facts in light of the evidence presented.  Smith fails to offer clear and convincing evidence that the state courts' factual findings regarding the prosecutor's gender-neutral explanation are erroneous.  Smith's suggestion that the prosecution engaged in gender-based discrimination because the prosecutor failed to question a woman regarding the fact that she had been a victim is not supported by any evidence.  Smith merely speculates, without support, that the State's strike of the white male juror was to intentionally create a predominantly female jury.  Speculation is not sufficient here, thus Smith's second basis for relief under *Batson* lacks merit and is **DENIED**.

**B.**     **Allegations Related to Trial Court Error**

16

### 1.      Impeachment with Prior Conviction

Smith argues that the trial court erred by finding that his prior conviction for aggravated robbery could be used to impeach him, "thereby discouraging [him] from testifying on his own behalf at trial."  (ECF No. 1 at PageID 14.)

The TCCA rejected Smith's claim on direct appeal.  The TCCA noted that "a *Momon*[4] hearing was held to determine whether Smith intended to testify at the trial."  *Smith*, 2011 WL 2176580, at *7.  During questioning by defense counsel, "Smith acknowledged that if he chose to testify, his prior robbery conviction might be used to impeach his testimony."  *Id.* Smith "agreed that he freely and voluntarily decided not to provide testimony during the trial." *Id.*

---

[4] In *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), the Tennessee Supreme Court set forth the procedure for trial courts to follow to ensure that a criminal defendant is not deprived of his or her right to testify.  The court held that "[a]t any time before conclusion of the proof, defense counsel shall request a hearing, out of the presence of the jury, to inquire of the defendant whether the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify."  *Id.* at 162.  That hearing must be "placed on the record and shall be in the presence of the trial judge."  *Id.*  Defense counsel must show, at a minimum, that:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

*Id.*

The trial court then questioned Smith.  In response to that questioning, Smith acknowledged that if he did choose to testify, the court would conduct a hearing about "whether or not the State would be allowed to impeach [Smith] or ask [him] about those convictions."  *Id.* Smith understood that robbery was a type of conviction that "goes to honesty" and that the trial court would allow the State to ask him about that conviction.  *Id.*  Ultimately, the TCCA concluded that there was "nothing improper" about the exchange between counsel, the trial court, and Smith.  *Id.*

First, it is not this Court's province "to re-examine state court determinations on state-law questions" such as the admissibility of evidence for impeachment purposes.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The decision of the state courts on a state law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Here, the TCCA's conclusion that the trial court appropriately noted that Smith's prior conviction could be used to impeach him under state law is axiomatically correct.

To obtain habeas relief on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue."  *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020).  Here, Smith suggests that the trial court's ruling on the admissibility of his prior conviction essentially precluded him from testifying on his own behalf.  Due process provides that "no one shall be condemned in his person . . . without an opportunity of being heard in his own defense."  *Holden v. Hardy*, 169 U.S. 366, 390-91 (1898).  A criminal defendant has a "fundamental right" to testify on his own

18

behalf.  *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52-53 & n.10 (1987)).  A defendant may waive this right, but only if done so knowingly and intelligently.  *Id.* (citation omitted).

The record reflects that after the State rested, trial counsel conducted *voir dire* of Smith regarding his right to testify and whether he was waiving that right.  Smith acknowledged that he and counsel had discussed whether he would testify the night before.  (ECF No. 14-6 at PageID 588.)  He stated that it was his decision not to testify, and that he was making that decision freely and voluntarily.  (*Id.*)  He denied that counsel had tried to force him not to testify.  (*Id.*)  He acknowledged that counsel had made suggestions regarding whether to testify, but that the decision not to testify was his alone.  (*Id.*)  He understood that if he chose to testify, he could be impeached with his prior conviction.  (*Id.* at PageID 589.)  Finally, Smith reiterated that it was his decision, made freely and voluntarily, not to testify.  (*Id.*)  The trial court then engaged in the questioning cited by the TCCA.  (*Id.* at PageID 589-91.)

Here, the record is clear that at no time did Smith affirmatively express a desire to testify to the trial court.  He does not provide any evidence to rebut the TCCA's conclusion that he freely and voluntarily waived his right to testify.  Furthermore, Smith's claim that the trial court's decision regarding the use of his prior conviction essentially prevented him from taking the stand is precluded by the Supreme Court's decision in *Ohler v. United States*, 529 U.S. 753 (2000).  In *Davis v. Larson*, the Sixth Circuit explained that *Ohler* stands for the proposition that a trial court's decision that the prosecution could impeach the defendant with her prior felony convictions did not "prevent [her] from taking the stand and presenting any admissible testimony which she chooses," and therefore, "did not contravene the defendant's right to testify in her own defense." 769 F. App'x 233, 238 (6th Cir. 2019) (quoting *Ohler*, 529 U.S. at 759–60).

19

For the foregoing reasons, the TCCA's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts in light of the evidence presented. Smith's third basis for relief lacks merit and is **DENIED**.

### 2. Denial of Motion for Judgment of Acquittal and for New Trial

Smith asserts that the trial court erred by denying his motion for judgment of acquittal and for new trial. (ECF No. 1 at PageID 17.) He argues that the trial court should have granted his motion "based on insufficiency of the evidence presented in this case." (ECF No. 1-1 at PageID 38.)

In *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), the Supreme Court held that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Courts review the record "in the light most favorable to the prosecution" when evaluating a *Jackson* claim. *Id.* The State is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt . . . ." *Id.* at 326. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* A challenge to the sufficiency of evidence addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (internal quotation marks omitted). "[A] reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against [her]

20

and a jury finding of guilt 'beyond a reasonable doubt.'" *Id*. (quoting *Jackson*, 443 U.S. at 314–15).

"[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (internal quotation marks omitted). Credibility determinations are reserved for the trier of fact and are "generally beyond the scope of habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012) (internal quotation marks and alteration omitted).

Petitioners raising a sufficiency of evidence claim "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam); *see Pinchon v. Myers*, 615 F.3d 631, 643–45 (6th Cir. 2010) (habeas review of the sufficiency of the evidence is doubly deferential). First, on direct appeal, the reviewing court defers to the trier of fact, and second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Coleman*, 566 U.S. at 651 (internal quotation marks omitted). The federal habeas court may overturn the state court's rejection of such a claim only if the state court's decision was "objectively unreasonable." *Id*. (citation omitted).

On direct appeal, Smith argued that "there was insufficient evidence to support his convictions of aggravated kidnapping and rape based on the inconsistencies in the victim's testimony." *Smith*, 2011 WL 2176580, at *7. The TCCA cited the correct rule from *Jackson*

21

and set forth the elements of both rape and aggravated kidnapping. *Id.* at \*8. The TCCA concluded that the State introduced "sufficient proof" for the jury to convict Smith of both rape and aggravated kidnapping. *Id.* The TCCA noted that the victim "testified that Smith grabbed her from the sidewalk and forced her into his car while armed with a gun." *Id.* Smith drove her to a "dark place," and she could not get out of the car. *Id.* Smith forced the victim to undress and penetrated her. *Id.* The victim "was able to identify Smith by certain tattoos, which included the word 'Boo' displayed on the left side of his chest." *Id.* The victim was able to grab a receipt from the vehicle, and law enforcement was able to use that receipt to locate Smith. *Id.* Finally, the victim's DNA was recovered from the vehicle, and she identified the vehicle in which the attack occurred. *Id.* Overall, the TCCA concluded, Smith's arguments were attacks on the victim's credibility, an issue reserved for the jury and not the court. *Id.*

In his § 2254 Petition, Smith reiterates the same arguments he raised on direct appeal, focusing on the inconsistencies in the victim's testimony. (ECF No. 1-1 at PageID 36–-37.) Smith argues that "the testimony of the alleged victim varied in significant detail in her allegations as to where she was when she was kidnapped, whether she was forced into the front seat or back seat of the car[,] and the victim alleged differently how many times she was raped." (*Id.* at PageID 36.) Smith casts doubt on the victim's testimony regarding her identification of Smith as the perpetrator because the victim "testified that the area where she was raped was completely dark." (*Id.* at PageID 36-37.) Smith also asks this Court to "take judicial notice of a scientific paper authorized by Donald E. Riley, Ph.D., of the University of Washington" regarding partial DNA profiles. (*Id.* at PageID 37–38.)

Smith essentially invites this Court to reweigh the credibility of the victim and resolve all conflicts and inferences in his favor. However, witness credibility remains the province of the

22

jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and Smith's attack on the victim's

credibility constitutes the sort of impermissible challenge to the quality, but not the sufficiency

of the State's evidence, *see Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  Moreover,

Smith's invitation for this Court to take judicial notice of a scientific paper is improper.  *See*

*Pinholster*, 563 U.S. at 181, 185.

Here, the TCCA's decision was not contrary to or an unreasonable application of clearly

established law and was based on a reasonable determination of the facts in light of the evidence

presented.  Smith has not shown that the TCCA's decision was "so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *See Richter*, 562 U.S. at 103.  Smith's request for relief on this basis

lacks merit and is **DENIED**.

### 3.    Sentencing Error

Next, Smith argues that the trial court erred by sentencing him "two years higher than the

minimum for Range I."  (ECF No. 1 at PageID 20.)  According to Smith, he was entitled to "the

minimum sentence of Range I Offender, eight (8) years."  (ECF No. 1-1 at PageID 38.)  Smith

contends that the trial court should have been "circumspect about applying the criminal history

enhancement too freely."  (*Id.*)  He asserts that "[t]he practice of using misdemeanor convictions

to enhance due to criminal history indeed may not be consonant with Tenn. Code Ann. § 40-35-

210(f)."  (*Id.* at PageID 39.)

Smith raised these arguments on direct appeal, and the TCCA rejected them.

Specifically, the TCCA noted that the "record support's the trial court's determination that

enhancement factor (1) is applicable [based upon Smith's extensive criminal record], and no

mitigating factors are evident from the record."  *Smith*, 2011 WL 2176580, at *10.  The TCCA

23

also noted that the ten-year sentence imposed by the trial court was "consistent with the sentencing principles and considerations of the Criminal Sentencing Reform Act of 1989." *Id.*

Smith raised this state law sentencing claim before the TCCA and reiterates his state law arguments in these federal habeas proceedings. He does not argue this claim as a violation of federal constitutional law. A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *see also Hawkins v. Nagy*, No. 24-1285, 2024 WL 4482122, at *4 (6th Cir. Aug. 9, 2024) (denying state law sentencing guidelines claim as not cognizable in habeas). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67. Smith's request for relief on this basis is not cognizable on federal habeas review and is, therefore, **DENIED**.

### 4.    Denial of Relief Under *White*

Next, Smith contends that the trial court "abused its discretion in denying relief under the *White* factors when the proof at trial demonstrated that confinement (under the kidnapping statute) was incidental to the accompanying felony." (ECF No. 1 at PageID 20.) According to Smith, his "kidnapping conviction based upon conduct that is incidental to the commission of a separate felony offense violates the due process specified by both the United States Constitution and Article I, Section 8 of the Tennessee Constitution." (ECF No. 1-1 at PageID 39.) Smith argues that he is entitled to a new trial on the especially aggravating kidnapping charge because the "jury was not properly instructed on the question of whether the victim's removal or confinement was essentially incidental to an accompanying felony." (*Id.* at PageID 40.)

In 2012, the Tennessee Supreme Court held "that the legislature did not intend for the kidnapping statutes to apply to the removal or confinement of a victim that is essentially

incidental to an accompanying felony, such as rape or robbery." *White*, 362 S.W.3d at 562.  That

court concluded that "[t]his inquiry, however, is a question for the jury after appropriate

instructions, which appellate courts review under the sufficiency of the evidence standard as the

due process safeguard." *Id.*

Smith raised this claim  on post-conviction appeal.  (ECF No. 14-16 at PageID 1271–72.)

The TCCA summarily rejected it, first stating that *White* did not apply to Smith's case.  *Smith*,

2014 WL 12651025, at *5.  The TCCA noted that *White* only applied to cases that were in "some

stage of the appellate process" when the appeal in *White* was filed.  *Id.*  Because Smith's direct

appeal had concluded in 2011, he was not entitled to such relief.  *Id.*

As an initial matter, any suggestion by Smith that the state courts erred in not granting

him a new trial based upon *White* is not cognizable in federal habeas review because such a

claim alleges a violation of state law.  The federal district courts in Tennessee have repeatedly

noted that *White* "articulated a new rule of state law, not federal law" and "did not rely upon any

federal case law for [its] determination."  *See Hubbard v. Lebo*, No. 2:17-cv-02452-TLP-tmp,

2020 WL 5753199, at *12 (W.D. Tenn. Sept. 24, 2020); *see also Alston v. Genovese*, No. 3:19-

cv-234, 2019 WL 6620463, at *5 (E.D. Tenn. Dec. 5, 2019); *Fuller v. Barbee*, No. 3:10-cv-

01064, 2014 WL 4851671, at *2 (M.D. Tenn. Sept. 29, 2014); *Richard v. Colson*, No. 3:12-cv-

409, 2012 WL 2721572, at *8 (M.D. Tenn. July 9, 2012).  Accordingly, Smith is not entitled to

relief with respect to this portion of his claim.

Smith argues that the trial court's failure to instruct the jury as *White* requires violated his

federal due process rights.  (ECF No. 1-1 at PageID 39.)  A sister district court has suggested that

a claim alleging that the applicable jury instruction in effect before *White* violates federal due

process principles could be cognizable on federal habeas review.  *See Thorne v. Holloway*, No.

3:14-cv-0695, 2014 WL 4411680, at *13 (M.D. Tenn. Sept. 8, 2014).  Skrmetti argues that, to the extent Smith raises such a claim, it is procedurally defaulted because Smith "did not fairly present this issue as a federal claim to the state appellate court."  (ECF No. 32 at PageID 1427.)

On post-conviction appeal, Smith asserted only that "his kidnapping conviction based upon conduct that is incidental to the commission of a separate felony offense violates Article I, Section 8 of the Tennessee Constitution."  (ECF No. 14-16 at PageID 1271.)  Nowhere in his appellate brief did Smith characterize his *White* claims as a federal due process claim.  And the Sixth Circuit "has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  Here, the record reflects that Smith presented, and the TCCA addressed, his *White* claim only in the context of Tennessee state law.

Smith failed to file a reply here and so has not addressed the issue of procedural default.  Thus, he has also failed to show cause and prejudice or a miscarriage of justice to overcome his procedural default.  Notwithstanding Smith's procedural default of this portion of his claim, however, the claim also lacks merit.

The Supreme Court has "made clear that 'the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief.'"  *Hanna v. Ishee*, 694 F.3d 596, 620 (6th Cir. 2012) (quoting *Estelle*, 502 U.S. at 71–72).  Instead, a federal court must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."  *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990) (internal quotation marks omitted)).  A jury instruction is constitutionally objectionable where it "so infected the entire trial that the resulting conviction violates due process."  *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Where the challenge is to

26

the absence of a jury instruction, the petitioner's burden is "especially heavy," because "[a]n

omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the

law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

In *White*, the Tennessee Supreme Court held that "trial courts must ensure that juries

return kidnapping convictions only in those instances in which the victim's removal or

confinement exceeds that which is necessary to accomplish the accompanying felony." *See*

*White*, 362 S.W.3d at 578. After *White*, to convict an individual of a kidnapping, the jury must

find that the "removal or confinement of the victim constituted a substantial interference with his

or her liberty. *See id.* at 580. To make that determination, the TSC noted that juries should

"consider all the relevant facts and circumstances of the case," including, *inter alia*, the

following factors:

> • the nature and duration of the victim's removal or confinement by the defendant;
>
> • whether the removal or confinement occurred during the commission of the separate offense;
>
> • whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> • whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
>
> • whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
>
> • whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*Id.* at 580–81.

Here, even though Smith's jury was not instructed regarding substantial interference as is

now required by *White*, Smith fails to demonstrate that the jury instructions given by the trial

27

court "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502

U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). On direct appeal, the TCCA noted that there was

"sufficient proof" to support Smith's aggravated kidnapping conviction. *Smith*, 2011 WL

3176580, at *8. The evidence presented at trial showed that Smith "grabbed [the victim] from

the sidewalk and forced her into his car while armed with a gun." *Id.* The victim also testified

that "she could not get out of his car and he drove her to a 'dark area.'" *Id.* Considering this

evidence, Smith does not demonstrate any due process violation arising from the jury

instructions, including the lack of a "*White*-related" one, given by the trial court.

For the foregoing reasons, Smith's request for relief on this basis is **DENIED** because it is

not cognizable, procedurally defaulted, and meritless.

### C.       Allegations Regarding Ineffective Assistance of Counsel

Smith's seventh through eleventh bases for relief involve allegations of numerous

instances of ineffective assistance by trial counsel.

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his

Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v.

Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate

two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient

performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation

fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of

ineffective assistance must apply "a strong presumption" that the attorney's representation was

"within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.

Because Smith raised his claims of ineffective assistance of counsel in the post-conviction proceedings, the Court will address the merits of his claims below.

### 1.    Failure to Present Evidence of Smith's STD

Smith contends that trial counsel was ineffective for failing to introduce at trial testimony or exhibits regarding Smith's STD.  (ECF No. 1 at PageID 21.)  He asserts that he had chlamydia at the time of the offense.  (ECF No. 1-1 at PageID 42.)  According to Smith, counsel should have presented evidence of his STD because the examination of the victim indicated that the victim did not have an STD.  (*Id.*)  Smith essentially contends that if he had committed the offense, there is no question that the victim would have contracted the STD.  (*Id.*)

On post-conviction appeal, the TCCA summarized the testimony Smith presented regarding this issue.  Smith testified that he asked counsel to present "medical records from the county jail, which would have shown . . . that [Smith] was treated for Chlamydia following his arrest for the offenses in this case."  *Smith*, 2014 WL 12651025, at *2.  Smith wanted counsel to present those records "after proof was admitted that the victim did not have any sexually transmitted disease."  *Id.*

The TCCA cited and applied the clearly established Supreme Court precedent in *Strickland*.  *Id.* at *4.  The TCCA then rejected Smith's claim, noting that even if the medical records in question were "arguably exculpatory, they were still extremely inflammatory because they demonstrated that [Smith] was incarcerated and contained graphic descriptions of [Smith's] symptoms."  *Id.* at *6.  Furthermore, the records did "not actually contain any test results indicating that [Smith] had Chlamydia or when he contracted the disease."  *Id.*

Here, Smith fails to offer any argument to suggest how counsel's failure to offer records and testimony regarding Smith's STD prejudiced his defense in any way.  He provides no evidence establishing that there was a 100% chance that the victim would have contracted an STD from him at the time of the offense, or, for that matter, that he had an STD at the time of the

offense. The fact that the victim's examination did not reveal the presence of an STD does not automatically lead to a conclusion that Smith was not the individual who raped her. The TCCA's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts in light of the evidence presented. Accordingly, Smith's request for relief on this basis lacks merit and is **DENIED**.

### 2. Failure to Present Expert Witness

Smith also argues that trial counsel was ineffective for "fail[ing] to secure and present a qualified expert witness, or to request a continuance for same." (ECF No. 1 at PageID 21.) According to Smith, his father engaged a DNA expert on his own and paid the expert $4,000.00 without first discussing it with trial counsel. (ECF No. 1-1 at PageID 41.) Trial counsel, however, told Smith that the expert he had hired was not qualified to testify at trial. (*Id.*)

The TCCA summarized Smith's father's testimony at the post-conviction hearing regarding the DNA expert. Smith's father testified that he "located an expert in deoxyribonucleic acid ("DNA") and that he asked trial counsel to call the expert as a witness, but counsel refused, telling Mr. Smith that the expert "wasn't qualified." *Smith*, 2014 WL 12651025, at *2. Smith's father testified that "neither trial counsel nor the private detective would attempt to locate a qualified expert witness and that he paid the potential witness $4,000.00 in advance of the trial." *Id.*

During cross-examination, Smith's father acknowledged that he "hired the DNA expert witness after hearing on the radio 'this advertisement about baby's momma, find out who the kid's—you can do DNA to get the kids done.'" *Id.* Smith's father admitted that he did not know any of the expert's credentials. *Id.* Smith's father testified that he "hired the expert

31

without consulting trial counsel but that he did make counsel aware of the man's name and telephone number some months before the petitioner's trial." *Id.*

Smith testified that, just before jury selection, he and counsel had a "heated exchange" about Smith's failure to pay counsel all that was owed, and that "it was immediately after this exchange that he learned that the DNA expert hired by [his father] would not be permitted to testify." *Id.* However, during cross-examination, Smith "conceded that the alleged DNA expert was actually not an expert in DNA at all." *Id.* at *3. Smith also admitted that "the rules of evidence prohibited trial counsel's calling the hired expert as an expert in DNA evidence," and that trial counsel did cross-examine the State's DNA expert. *Id.*

The TCCA, applying *Strickland*, rejected Smith's assertion of ineffective assistance, noting that Smith had not "secure[d] and present[ed] a DNA expert at the evidentiary hearing." *Id.* at *5. Because of that failure, neither the post-conviction court nor the TCCA could "speculate or guess on . . . what a witness's testimony might have been if introduced." *Id.*

Here, Smith again fails to offer any evidence regarding the testimony of a potential expert witness and how this testimony would have been beneficial to his defense. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)).

Furthermore, considering Smith's acknowledgment that the "expert" hired by his father was not qualified to offer testimony, Smith fails to demonstrate that counsel was ineffective for failing to present testimony from that witness.  Smith acknowledged that trial counsel cross-examined the State's DNA expert. As noted by the Sixth Circuit, "the Supreme Court has held that '[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation.'" *Jackson v. McQuiggin*, 553 F. App'x 575, 582 (6th Cir. 2014) (quoting *Harrington*, 562 U.S. at 111).  Smith fails to provide evidence regarding any further action counsel should have taken regarding expert testimony that would have led to a different outcome at trial.

The TCCA's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts in light of the evidence presented.  Accordingly, Smith's request for relief on this basis lacks merit and is **DENIED**.

### 3.    Failure to Call Witnesses and Present Exhibits

Smith's ninth basis for relief is his contention that trial counsel was ineffective by not presenting witnesses and exhibits to "account for the time frame during which the crime allegedly occurred." (ECF No. 1 at PageID 21.)  Smith faults counsel for not presenting his mother, Beverly Smith, as a witness to testify that she had seen Smith at the time of the offense. (ECF No. 1-1 at PageID 43.)  Smith argues further that counsel failed to call Frank Causey, his sister Leera Smith, and his girlfriend Monique Cage as witnesses.  (*Id.* at PageID 44.)

Smith's tenth basis for relief is based on counsel's failure to present a receipt from Ultimate Gear at the Raleigh Springs Mall to show that Smith was at that store around the time of the offense.  (*Id.* at PageID 45–46.)  Smith also faults counsel for not obtaining video from

33

"several locations that would have proved his alibi on the night of the crime." (*Id.* at PageID 46.)

Smith, his mother, and his father testified regarding these grounds for relief at the post-conviction hearing. Smith's mother testified that "she could have provided alibi testimony" for Smith. *Smith*, 2014 WL 12651025, at \*1. Ms. Smith testified that Smith "was at her home caring for her sick daughter from 5:00 p.m. until midnight on the night of the offense and that he left for only a brief time to purchase food for them." *Id.* Ms. Smith stated that "trial counsel prepared her to testify at trial but never called her as a witness." *Id.* On cross-examination, however, Ms. Smith "conceded that she did not observe all of [Smith's] comings and goings [that night] first hand." *Id.* at \*2.

Smith's father testified that "he 'paid [trial counsel] extra to hire a detective to go get the video' surveillance from a Walgreen's where [Smith] had allegedly gone on the night of the offenses, but trial counsel did not acquire the recording before it was destroyed by the store." *Id.* at \*2. On cross-examination, Smith's father "acknowledged that trial counsel had told him that he had been unable to procure the Walgreen's surveillance video but that counsel 'had the clerk sign a piece of paper saying that she remembered [Smith] coming in the store and she came to testify.'" *Id.*

Smith testified "that he hired trial counsel on the day following his arrest and that he immediately informed counsel of his trip to the Walgreen's on the night of the offenses." Smith asked counsel "to call as alibi witnesses a friend he had taken to the hospital, his mother, his sister, his son's mother, and the cashier from the Walgreen's." *Id.* Smith claimed that video surveillance from Walgreen's and the hospital would have "discredited the victim's testimony that [Smith] kidnapped her at 5:00 p.m. and held her hostage for seven hours." *Id.* Smith

34

testified further that a receipt from the Ultimate Gear store at the Raleigh Springs Mall would have showed that he "was at the mall at 6:21 p.m. on the date of the offenses." *Id.*

During cross-examination, Smith testified that "he telephoned the Walgreen's and was told that 'they only hold the tapes for ninety days.'" *Id.* at \*3. He was also told that the mall had changed security companies so it would be "kind of hard" to track down that surveillance video. *Id.* Smith acknowledged that "counsel's investigator went to the Ultimate Gear store in an attempt to find a witness to [Smith's] presence in the store on the night of the offenses." *Id.* He reiterated that he "wanted trial counsel to call Frank Causey, Keera Smith, Beverly Smith, Monique Cage, and Amber Clark as alibi witnesses." *Id.* He also stated that Causey and Keera Smith were unable to attend the evidentiary hearing, that he was aware that Causey had a criminal record, and that he did not know where Ms. Cage was, even though she was the mother of his son. *Id.*

Applying *Strickland*, the TCCA rejected Smith's claims of ineffective assistance based on these issues. The TCCA first noted that Smith's mother's "evidentiary hearing testimony did not, in fact, establish an alibi." *Id.* at \*5. Second, Smith's failure to present testimony from Keera Smith and Causey at the evidentiary hearing "result[ed] in a failure of his claim for relief on grounds that counsel should have called them at trial." *Id.* Finally, counsel did not perform deficiently by failing to present surveillance video because Smith did not present proof that such video existed when he hired counsel to represent him and proof that the video would have supported his alibi. *Id.*

Here, Smith fails to offer any evidence to suggest that his mother's testimony would have established an alibi for him given that she conceded at the post-conviction hearing that Smith was not home when she returned from work and that she was not aware of all of Smith's

comings and goings that evening.  Likewise, Smith fails to offer any evidence regarding the testimony that Frank Causey, Keera Smith, and Monique Cage would have offered and how that testimony would have been beneficial to his defense.  *See Tinsley*, 399 F.3d at 810; *Ashimi*, 932 F.2d at 650.  Furthermore, with respect to Keera Smith, Beverly Smith, and Monique Cage, given their relationships to Smith, a jury could have reasonably concluded that they were not credible alibi witnesses.  *Cf. Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012) (concluding that trial counsel could have reasonably concluded that proposed alibi witnesses were not credible because they were related to the defendant).

As for the video surveillance footage and Ultimate Gear receipt, Smith again fails to offer any evidence that the footage in question existed by the time Smith hired counsel to represent him and that the footage would have been beneficial to his defense.  Smith did have Amber Clark, the Walgreen's employee who was the cashier when Smith purchased cranberry juice on the night of the offense, testify on his behalf.  Any video footage from Walgreen's would have been cumulative of Clark's testimony, and the Supreme Court has held that counsel cannot be ineffective if the evidence that counsel failed to offer "can reasonably be expected to be only cumulative." *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009).  Smith also fails to offer any evidence that the Ultimate Gear receipt in question was a receipt for a purchase Smith personally made, and, even if he did make that purchase, that receipt would only have served to impeach the victim's testimony that Smith "held her hostage for seven hours." *Smith*, 2014 WL 12651025.  It would not, however, have conclusively demonstrated that Smith was innocent.

For these reasons, the TCCA's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an

36

unreasonable determination of facts considering the evidence presented. Accordingly, Smith's request for relief on these bases lacks merit and are **DENIED**.

### 4.    Counsel's Performance Suffered Due to Lack of Compensation

Smith argues that the post-conviction hearing "demonstrated that trial counsel's performance suffered due to being upset over not being fully compensated." (ECF No. 1 at PageID 21.) Smith suggests that trial counsel's other alleged instances of ineffective assistance, discussed above, "were all because he . . . was upset over not being fully compensated." (ECF No. 1-1 at PageID 48.)

Smith's parents and Smith himself testified at the post-conviction hearing regarding this issue. Smith's mother "testified that she was unable to pay trial counsel the entirety of his fee before the trial in this case and that her failure to pay became an issue." *Smith*, 2014 WL 12651025, at \*1. She "recalled that trial counsel often failed to return her telephone calls and that she believed his neglect was 'because [she] owed him the money.'" *Id.* Smith's father "testified that his failure to pay trial counsel in full before the trial became an issue at the trial." *Id.* at \*2.

Smith "testified that just before jury selection, he and trial counsel had a heated exchange regarding [Smith's] failure to pay counsel's fee in its entirety prior to the trial." *Id.* Smith stated that he "had a few words" with counsel because "it was maybe sixteen-hundred-dollars that he was owed." *Id.* Smith was "mad" because of counsel's demand for payment. *Id.*

The TCCA rejected Smith's claim for lack of "any proof that petitioner's failure to pay counsel's fee in its entirety prior to trial affected trial counsel's representation in any way." *Id.* at \*6. The TCCA noted that Smith's counsel "vigorously cross-examined the State's witnesses and put on . . . alibi proof available to him." *Id.* The record did not include any indication that counsel's

"efforts were anything less than zealous, let alone that he allowed his understandable frustration with the petitioner's failure to pay the agreed upon fee to hamper his representation." *Id.*

In his § 2254 Petition, Smith fails to offer any evidence that his failure to pay counsel's fee in its entirety before trial affected counsel's representation and prejudiced his defense in any way. As the TCCA noted, Smith himself acknowledged that counsel extensively cross-examined both the victim and the State's DNA expert. *Id.* at *3. Moreover, to the extent Smith raises a cumulative error ineffective assistance claim based upon his belief that the failure to pay led counsel to be ineffective in the various ways discussed above, Smith cannot show that the alleged cumulative errors violated his Sixth Amendment right because each individual claim of ineffective assistance lacks merit. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

The TCCA's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts considering the evidence presented. Accordingly, Smith's request for relief on this basis lacks merit and is **DENIED**.

## D. Actual Innocence

Smith last basis for relief is his contention that he is actually innocent, and that both trial and post-conviction counsel were ineffective for raising an actual innocence claim. (ECF No. 1 at PageID 21.)

Freestanding "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Under *Herrera*, the evidence supporting a potential freestanding actual innocence claim would have to be strong enough to make execution "constitutionally

38

intolerable" in a capital case despite the conviction being the product of a fair trial. *Schlup v. Delo*, 513 U.S. 298, 316–17 (1995). Thus, Smith would have to convince this Court that any new evidence "unquestionably" establishes innocence. *Id.* at 317. Even so, the Sixth Circuit has "repeatedly indicated that such claims are not cognizable on habeas." *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (quoting *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)). Even if they were, "the petitioner's burden 'would necessarily be extraordinarily high.'" *Smith*, 962 F.3d at 207 (quoting *Herrera*, 506 U.S. at 417).

To begin, Smith's freestanding actual innocence claim is not cognizable in federal habeas corpus proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). Moreover, Smith's suggestion that trial counsel was ineffective for failing to argue actual innocence, which is essentially a restatement of Smith's previously-denied claims that counsel was ineffective for failing to present an alibi defense, lacks merit. Accordingly, Smith's twelfth basis for relief lacks merit and is **DENIED**.

## CONCLUSION

For the foregoing reasons, Smith's § 2254 Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)–(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the § 2254 Petition. Because any appeal by Smith does not deserve attention, the Court **DENIES** a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[5]

**IT IS SO ORDERED** this 12th day of May, 2026.

s/Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] If Smith files a notice of appeal, he must also pay the full $605.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.